## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| 24-7 BRIGHT STAR HEALTHCARE, LLC, | **Case No. 1:21-cv-4609** |
| *Plaintiff,* | **COMPLAINT FOR:** |
| v. | **(1) TRADEMARK INFRINGEMENT [15 U.S.C. § 1114]** |
| RES-CARE, INC. d/b/a BRIGHTSPRING HEALTH SERVICES, | **(2) FALSE DESIGNATION OF ORIGIN/UNFAIR COMPETITION [15 U.S.C. § 1125(a)];** |
| *Defendant.* | **(3) TRADEMARK CANCELLATION [15 U.S.C. § 1119];** |
| | **(4) UNFAIR COMPETITION IN VIOLATION OF ILLINOIS'S UNIFORM DECEPTIVE TRADE PRACTICES ACT [815 ILL. COMP. STAT. 510/1 ET SEQ.]** |
| | **(5) UNFAIR COMPETITION IN VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT [815 ILL. COMP. STAT. 505/1 ET SEQ.]** |
| | **(6) COMMON LAW TRADEMARK INFRINGEMENT** |
| | **[JURY DEMAND]** |

## <u>COMPLAINT</u>

Plaintiff 24-7 Bright Star Healthcare, LLC ("BrightStar" or "Plaintiff"), by and through their attorneys, files this Complaint against Defendant Res-Care, Inc. d/b/a BrightSpring Health Services ("BrightSpring" or "Defendant") and alleges as follows upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other matters:

1

## NATURE OF THE CASE

1.      This is an action to prevent BrightSpring from unlawfully copying BrightStar's trademarks and to stop BrightSpring's unethical and otherwise unlawful attempt to confuse consumers into believing that BrightStar sponsors, endorses, or is affiliated with BrightSpring.

2.      For the past 18 years, BrightStar has used its principal mark "BrightStar" (the "BrightStar Mark") in connection with home care and health care services, becoming a leader in the home healthcare industry in this judicial district and beyond.

3.      In 2002, Shelly Sun formed BrightStar after a personal experience in trying to find care for a family member. Sun was frustrated that, when calling to check in on her loved one, she would more often reach an answering machine than a live person. Why could you get great service at a restaurant, but could not find that same quality of service for something as intimate and personal as the care of a loved one?

4.      Wanting to spare others from that same experience, Shelly formed BrightStar, which provides personal care in a variety of situations, including: for people of all ages in their homes; providing staffing for hospitals, nursing homes, and doctors' offices; providing child care for parents who are unavailable due to military service, professional obligations, or simply wanting a night out; for seniors who want companionship; and for people who may need rehab therapy. Consistent across these services are BrightStar's efforts to provide quality service, improve the quality of life of its clients and its use of the BrightStar Mark.

5.      Ms. Sun has built the BrightStar brand and mark into one of the premier healthcare companies in the United States. As a direct result of Ms. Sun's efforts, BrightStar has received numerous industry recognition, including being named one of the 50 Fastest-Growing Women-Owned/Led Companies Worldwide in 2019 by the Women Presidents' Organization and

earning the top ranking on the Wall Street Journal's list of Fastest-Growing Women-led

Companies in 2012. Ms. Sun has been named one of the Top 100 Women Entrepreneurs of 2020

and one of the Highest Rated CEOs During the COVID-19 Crisis.

6.     As a result of BrightStar's efforts, the BrightStar brand and trademarks are

instantly recognizable to a large portion of the U.S. population, including individuals within this

District, and are associated with Plaintiff's services and its considerable goodwill.

7.     Defendant BrightSpring also provides home health services. Although originally

formed in 1974, Defendant did not operate under the name "BrightSpring" until late 2018 but

instead operated as "Res-Care."

8.     In January 2018—shortly before BrightSpring filed its application for the

BrightSpring Mark—BrightSpring's President Jon Rousseau noted that he admired the

brightstarcare.com website, commented that he admired the BrightStar delivery model, and

expressed his disappointment that BrightStar was not an acquisition target.

9.     On information and belief, while operating as Res-Care, Defendant developed a

poor reputation with not only customers, but with medical professionals and employees:



*see also* David Kani, *Calling ResCare (BrightSpring) Whistleblowers*, Hochfelsen Kani LLP (Nov. 5, 2019) (discussing alleged Medicaid and/or Medicare fraud claims).

10.     Upon information and belief, to escape this poor reputation—and envious of BrightStar's success and reputation—Defendant elected to rebrand in 2018. Defendant intentionally selected a name knowingly confusing and similar to Plaintiff BrightStar, which had by then established itself as a leader in the home health services industry.

11.     Defendant BrightSpring's copying of BrightStar's Mark is not subtle or nuanced, but rather blatant and notorious, as is Defendant's use of the mark. The following representative images illustrate the threat to BrightStar and the public caused by BrightSpring's decision to adopt a name and mark so strikingly similar to BrightStar:


Plaintiff BrightStar's Facebook Page


Defendant BrightSpring's Careers Facebook Page

12.     Furthermore, BrightSpring unfairly copied the wave-like shape above the BrightStar logo—which is federally protected and incorporated in many of BrightStar's Family of Marks—and placed a similar design above the BrightSpring Mark.

13.     Despite multiple objections from BrightStar, BrightSpring continues to use its confusingly similar BrightSpring mark to identify **all** its locations across the country, including its home health care services that compete directly with BrightStar home health care franchisees, causing confusion and interfering with BrightStar's business.



14.     Although Defendant BrightSpring may claim it uses the BrightSpring Mark solely in connection with its holding company entity, it is increasingly using the BrightSpring Mark with public-facing channels to promote its home care services.

15.     In addition to using its confusingly similar name to unfairly compete in the marketplace for home health care, Defendant BrightSpring also uses its confusingly similar name when competing for health care professionals and other employees, who are in high demand and vital to the ability of both Plaintiff and Defendant to provide services to their consumers.

16.     BrightSpring even refers to its employees as STARS in recent job postings that appear under the heading ![BrightSpring Health Services], emphasizing STARS in BrightSpring's efforts to recruit employees in a highly competitive job market during an acute shortage of qualified health care workers due to the Covid-19 pandemic:

> **Responsibilities**
>
> Join a team of passionate and caring people who make a difference in people's lives. We are now hiring for Direct Support Professionals (DSPs) to provide direct care to those with intellectual and developmental disabilities. Our DSPs are the STARS of our organization who provide caregiving to the people we support. This may be in a group home, home-like setting.

Ex. 1 (emphasis added).

17.     BrightSpring's unlawful activities, described more fully below, constitute trademark infringement, false designation of origin, and unfair competition. Plaintiff BrightStar accordingly seeks injunctive relief, disgorgement of Defendant BrightSpring's profits, Plaintiff BrightStar's actual damages, cancellation of Defendant BrightSpring's trademark registration for the BrightSpring mark, attorney fees, and costs.

## THE PARTIES

18.     BrightStar is a corporation organized under the laws of the State of Nevada, having a principal place of business at 1125 Tri-State Parkway Gurnee, Illinois 60031.

19.     Res-Care, Inc. is a corporation organized under the laws of Kentucky with an address of 805 N. Whittington Parkway, Suite 400, Louisville, Kentucky 40222, and BrightSpring Health Services is an assumed name of Res-Care, Inc. with a mailing address of 9901 Linn Station Road, Louisville KY 40223.

## JURISDICTION AND VENUE

20.     This action arises under the federal Trademark Act, 15 U.S.C. § 1051, *et seq.*, and the related law of the State of Illinois. This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and (b). Further, this Court has supplemental jurisdiction over BrightStar's state-law claims pursuant to 28 U.S.C. § 1367(a) because those claims are substantially related to BrightStar's federal claims and arise out of the same operative facts.

21.     This Court has personal jurisdiction over BrightSpring, and venue is proper in this

District pursuant to 28 U.S.C. § 1391(b) and (c). BrightSpring transacts business in this District and has targeted residents of this District and Illinois using its infringing BrightSpring name and mark, causing tortious injury to BrightStar in this District and elsewhere throughout Illinois. Venue is also proper because BrightSpring is subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

### BRIGHTSTAR, ITS BUSINESS, AND ITS SERVICES

22.     BrightStar is a leading provider of home care services. Founded in 2002, BrightStar was created after its founders needed home care services for a family member and decided to start a company dedicated to providing quality care for others. Presently, BrightStar has more than 330 franchise locations in 39 states, and its franchises employ more than 20,000 individuals. Plaintiff carefully polices and controls the use of its BrightStar Mark, including through franchise agreements.

23.     Under the BrightStar Mark and/or BrightStar Family of Marks, BrightStar offers a range of services, including medical and non-medical home care services. Among BrightStar's services are at-home services for adults living with physical disabilities or special needs or with Alzheimer's or dementia, respite care services, supplemental health care staffing services, and transportation services.

24.     BrightStar's unique care model utilizes a registered nurse who reviews every care plan and conducts supervisory visits to ensure compliance with the plan of care and maintenance of high-quality standards.

25.     BrightStar has received numerous awards and recognitions over the years, including:

- No. 1 on the *Wall Street Journal*'s list of Fastest-Growing Women-led Companies in 2012;

- One of America's Best Midsize Employers and one of America's Best Low-Investment Franchises in 2019 by *Forbes* magazine;

- One of the 50 Fastest-Growing Women-Owned/Led Companies Worldwide in 2019 by the Women Presidents' Organization;

- One of the 50 fastest-growing Chicagoland companies in 2015 by Crain's Chicago Business;

- Among "2016 Best of the Best" according to Franchise Business Review, a national franchise market research firm;

- One of the fastest-growing privately owned companies in the United States for several years by *Inc. Magazine*;

- One of the Top 100 Fastest Growing Franchises in 2017 by Franchise Gator; and

- Glassdoor's Highest Rated CEOs During the COVID-19 Crisis;

26.     The Joint Commission, a nonprofit that accredits U.S. health care organizations, awarded BrightStar its Enterprise Champion for Quality Award nine years in a row.

27.     Shelly Sun, BrightStar's CEO and founder, received the International Franchise Association's 2009 Entrepreneur of the Year Award.

28.     Ms. Sun and BrightStar were also featured in 2011 on the nationally televised CBS program *Undercover Boss*, an Emmy® Award-winning reality TV show that features executives who go "undercover" to work anonymously as an entry-level employee of their company. The BrightStar episode originally was viewed by 9.5 million viewers. Even more viewers saw this episode and learned about BrightStar when CBS, the O Network, and the TLC television networks each rebroadcast the episode. That episode can also currently be seen on YouTube and Netflix.

## BRIGHTSTAR'S TRADEMARK REGISTRATIONS

29.     In addition to its longstanding and strong common-law trademark rights in the BrightStar Mark, BrightStar owns the following trademark registrations (collectively, the

BrightStar "Family of Marks"), among others:

| Mark | Reg. No. Reg. Date | Goods/services |
|---|---|---|
| BRIGHTSTAR | 3608702<br><br>April 21, 2009<br><br>Incontestable status | Medical and nursing personnel placement, recruiting and staffing in Class 35 |
| BRIGHTSTAR CARE | 3101923<br><br>June 6, 2006<br><br>Incontestable status | Medical and nursing personnel placement, recruitment and staffing in Class 35 |
| BrightStar Care | 3101922<br><br>June 6, 2006<br><br>Incontestable status | Medical and nursing personnel placement, recruiting and staffing in Class 35 |
| BrightStar Care | 3608700<br><br>April 21, 2009<br><br>Incontestable status | Transportation services provided to individuals in Class 39;<br><br>child care services in Class 43;<br><br>home health care services in Class 44;<br><br>social service, namely, companionship services for the elderly and disabled; in-home support services to senior persons, namely, geriatric care management services and personal affairs management services in the nature of the coordination of necessary services and care for older individuals; providing non-medical personal assistant services for others in the nature of planning, organizing, coordinating, arranging and assisting individuals to perform daily tasks; providing non-medical assisted living services for personal purposes in the nature of scheduling appointments, answering the telephone, checking messages, mail sorting, handling and receiving, and secretarial and clerical services; personal care assistance of activities of daily living, such as |

| | | |
|---|---|---|
| | | bathing, grooming and personal mobility for mentally and physically challenged people and for the elderly; running errands for others; personal shopping for others; providing personal support services for families of patients with life threatening disorders and other illnesses and families of mentally and physically challenged individuals, namely, companionship, help with medical forms, counseling and emotional support in Class 45 |
| BRIGHTSTAR CARE | 3608701<br><br>April 21, 2009<br><br>Incontestable status | Transportation services provided to individuals in Class 39;<br><br>child care services in Class 43;<br><br>home health care services in Class 44;<br><br>social service, namely, companionship services for the elderly and disabled; in-home support services to senior persons, namely, geriatric care management services and personal affairs management services in the nature of the coordination of necessary services and care for older individuals; providing non-medical personal assistant services for others in the nature of planning, organizing, coordinating, arranging and assisting individuals to perform daily tasks; providing non-medical assisted living services for personal purposes in the nature of scheduling appointments, answering the telephone, checking messages, mail sorting, handling and receiving, and secretarial and clerical services; personal care assistance of activities of daily living, such as bathing, grooming and personal mobility for mentally and physically challenged people and for the elderly; running errands for others; personal shopping for others; providing personal support services for families of patients with life threatening disorders and other illnesses and families of mentally and physically challenged individuals, namely, companionship, help with medical forms, counseling and emotional support in Class 45 |
| BRIGHTSTAR STAFFING | 3861740<br><br>Oct. 12, 2010 | Medical and nursing personnel placement, recruiting and staffing in Class 35 |

| | Incontestable status | |
|---|---|---|
| BRIGHTSTAR CARE | 4042547<br><br>Oct. 18, 2011<br><br>Incontestable status | Medical and nursing personnel placement, recruiting and staffing in Class 35;<br><br>transportation services provided to individuals in Class 39;<br><br>child care services in Class 43;<br><br>home health care services in Class 44;<br><br>social service, namely, companionship services for the elderly and disabled; in-home support services to senior persons, namely, geriatric care management services and personal affairs management services in the nature of the coordination of necessary services and care for older individuals; providing non-medical personal assistant services for others in the nature of planning, organizing, coordinating, arranging and assisting individuals to perform daily tasks; providing non-medical assisted living services for personal purposes in the nature of scheduling appointments, answering the telephone, checking messages, mail sorting, handling and receiving, and secretarial and clerical services; personal care assistance of activities of daily living, such as bathing, grooming and personal mobility for mentally and physically challenged people and for the elderly; running errands for others; personal shopping for others; providing personal support services for families of patients with life threatening disorders and other illnesses and families of mentally and physically challenged individuals, namely, companionship, help with medical forms, counseling and emotional support in Class 45 |

| | | |
|---|---|---|
| BRIGHTSTAR CLINICAL PATHWAYS | 4302561<br><br>March 12, 2013<br><br>Incontestable status | Transportation services provided to individuals in Class 39;<br><br>providing day care services for adults and children, namely, providing elder care services for adults and disabled individuals in Class 43;<br><br>home health care services in Class 44;<br><br>social service, namely, companionship services for infants, children, the elderly, and disabled; in-home support services to senior persons, namely, geriatric care management services and personal affairs management services in the nature of the coordination of necessary services and care for older individuals; providing non-medical personal assistant services for others in the nature of planning, organizing, coordinating, arranging and assisting individuals to perform daily tasks; providing non-medical assisted living services for personal purposes in the nature of scheduling appointments, answering the telephone, checking messages, mail sorting, handling and receiving, and secretarial and clerical services; personal care assistance of activities of daily living, such as bathing, grooming and personal mobility for mentally and physically challenged people, the elderly, and infants and children; running errands for others; personal shopping for others; providing personal support services for families of patients with life threatening disorders and other illnesses and families of mentally and physically challenged individuals, namely, companionship, help with medical forms, counseling and emotional support; personal concierge services for others comprising making requested personal arrangements and reservations, running errands and providing customer specific information to meet individual needs, all rendered in business establishments and homes in Class 45 |
| BRIGHTSTAR HOSPICECARE | 4411310<br><br>Oct. 1, 2013<br><br>Incontestable status | Transportation services provided to individuals in Class 39;<br><br>providing elder care services for adults and disabled individuals and providing child care services for children and disabled individuals in |

| | | |
|---|---|---|
| | | Class 43;<br><br>hospice care services provided in either the home or in facilities in Class 44;<br><br>social service, namely, companionship services for the elderly and disabled; in-home support services to senior persons, namely, geriatric care management services and personal affairs management services in the nature of the coordination of necessary services and care for older individuals; personal care assistance of activities of daily living, such as bathing, grooming and personal mobility for mentally and physically challenged people and for the elderly; providing personal support services for families of patients with life threatening disorders, namely, companionship, help with medical forms, counseling and emotional support in Class 45 |
| BRIGHTSTAR MEDICARE | 4455226<br><br>Dec. 24, 2013<br><br>Incontestable status | Providing elder care services for adults and disabled individuals and providing child care services for children and disabled individuals in Class 43;<br><br>home health care services in Class 44;<br><br>social service, namely, companionship services for the elderly and disabled; in-home support services to senior persons, namely, geriatric care management services and personal affairs management services in the nature of the coordination of necessary services and care for older individuals; personal care assistance of activities of daily living, such as bathing, grooming and personal mobility for mentally and physically challenged people and for the elderly; providing personal support services for families of patients with life threatening disorders and other illnesses and families of mentally and physically challenged individuals, namely, companionship, help with medical forms, counseling and emotional support; healthcare and pharmaceutical information services, namely, providing information on government medical programs, namely, Medicare in Class 45 |
| BRIGHTSTAR | 4455227 | Providing day care services for adults and |

| | | |
|---|---|---|
| DAYCARE | Dec. 24, 2013<br><br>Incontestable status | children, namely, providing elder care services for adults and disabled individuals and providing child care services for children and disabled individuals in Class 43 |
| BRIGHTSTAR SENIOR LIVING | 4538086<br><br>May 27, 2014<br><br>Incontestable status | Providing assisted living facilities in Class 43 |
| **BrightStar** SENIOR LIVING | 4557235<br><br>June 24, 2014<br><br>Incontestable status | Providing assisted living facilities in Class 43 |
| BRIGHTSTAR CONNECTIONS | 4588598<br><br>Aug. 19, 2014<br><br>Incontestable status | Providing elder care services for persons suffering from Alzheimer's and forms of dementia in Class 43 |
| **BrightStar Care** A HIGHER STANDARD OF MEDICAL STAFFING | 4655802 Dec. 16, 2014 Incontestable status | Medical and nursing personnel placement, recruiting and staffing in Class 35 |
| **BrightStar Care** HOME CARE \| MEDICAL STAFFING *A Higher Standard* | 4659696<br><br>Dec. 23, 2014 Incontestable status | Medical and nursing personnel placement, recruiting and staffing in Class 35;<br><br>transportation services provided to individuals in Class 39;<br><br>providing day care services for adults and children, namely, providing elder care services for adults and disabled individuals and providing child care services for children and disabled individuals in Class 43;<br><br>home health care services in Class 44; |

| | | |
|---|---|---|
| | | social service, namely, companionship services for infants, children, the elderly, and disabled; In-home support services to senior persons, namely, geriatric care management services and personal affairs management services in the nature of the coordination of necessary services and care for older individuals; In-home and in-hospital companionship services for infants and children; In-home care services to infants and children, namely, personal affairs management services in the nature of the coordination of necessary services and care for infants and children; Providing non-medical personal assistant services for others in the nature of planning, organizing, coordinating, arranging and assisting individuals to perform daily tasks; Providing non-medical assisted living services for personal purposes in the nature of scheduling appointments, answering the telephone, checking messages, mail sorting, handling and receiving, and secretarial and clerical services; Personal care assistance of activities of daily living, such as bathing, grooming and personal mobility for mentally and physically challenged people, the elderly, and infants and children; Running errands for others; Personal shopping for others; Providing personal support services for families of patients with life threatening disorders and other illnesses, families of infants and children, and families of mentally and physically challenged individuals, namely, companionship, help with medical forms, counseling and emotional support in Class 45 |
| BRIGHTSTAR CARE – A HIGHER STANDARD OF CARE | 4836093<br><br>Oct. 20, 2015 | Medical and nursing personnel placement, recruiting and staffing in Class 35;<br><br>transportation services provided to individuals in Class 39;<br><br>providing day care services for adults and children, namely, providing elder care services for adults and disabled individuals and providing child care services for children and disabled individuals in Class 43;<br><br>home health care services in Class 44; |

| | | |
|---|---|---|
| | | social service, namely, companionship services for infants, children, the elderly, and disabled; In-home support services to senior persons, namely, geriatric care management services and personal affairs management services in the nature of the coordination of necessary services and care for older individuals; In-home and in-hospital companionship services for infants and children; In-home care services to infants and children, namely, personal affairs management services in the nature of the coordination of necessary services and care for infants and children; Providing non-medical personal assistant services for others in the nature of planning, organizing, coordinating, arranging and assisting individuals to perform daily tasks; Providing non-medical assisted living services for personal purposes in the nature of scheduling appointments, answering the telephone, checking messages, mail sorting, handling and receiving, and secretarial and clerical services; Personal care assistance of activities of daily living, such as bathing, grooming and personal mobility for mentally and physically challenged people, the elderly, and infants and children; Running errands for others; Personal shopping for others; Providing personal support services for families of patients with life threatening disorders and other illnesses, families of infants and children, and families of mentally and physically challenged individuals, namely, companionship, help with medical forms, counseling and emotional support in Class 45 |
|  | 4844658<br><br>Nov. 3, 2015 | Medical and nursing personnel placement, recruiting and staffing in Class 35;<br><br>transportation services provided to individuals in Class 39;<br><br>providing day care services for adults and children, namely, providing elder care services for adults and disabled individuals and providing child care services for children and disabled individuals in Class 43;<br><br>home health care services in Class 44; |

| | | |
|---|---|---|
| | | social service, namely, companionship services for infants, children, the elderly, and disabled; In-home support services to senior persons, namely, geriatric care management services and personal affairs management services in the nature of the coordination of necessary services and care for older individuals; In-home and in-hospital companionship services for infants and children; In-home care services to infants and children, namely, personal affairs management services in the nature of the coordination of necessary services and care for infants and children; Providing non-medical personal assistant services for others in the nature of planning, organizing, coordinating, arranging and assisting individuals to perform daily tasks; Providing non-medical assisted living services for personal purposes in the nature of scheduling appointments, answering the telephone, checking messages, mail sorting, handling and receiving, and secretarial and clerical services; Personal care assistance of activities of daily living, such as bathing, grooming and personal mobility for mentally and physically challenged people, the elderly, and infants and children; Running errands for others; Personal shopping for others; Providing personal support services for families of patients with life threatening disorders and other illnesses, families of infants and children, and families of mentally and physically challenged individuals, namely, companionship, help with medical forms, counseling and emotional support in Class 45 |
| **BrightStar** Senior Living ASSISTED LIVING \| MEMORY CARE *A Higher Standard* | 5041138 Sept. 13, 2016 | Providing assisted living facilities in Class 43 |

30.     Printouts of the details of these registrations are attached as Exhibit 2A-2S.

31.     The registrations listed above constitute *prima facie* evidence of BrightStar's ownership of and exclusive rights to use the registered marks in connection with the services recited in the registrations. Moreover, U.S. Reg. Nos. 3101923, 3101922, 3608700, 3608701,

3608702, 3861740, 4042547, 4302561, 4411310, 4455226, 4455227, 4538086, 4557235, 4588598, 4655802, and 4659696 are incontestable and constitute conclusive evidence of BrightStar's ownership of and exclusive rights to use the BrightStar Mark in connection with the services recited in those registrations.

<b>PLAINTIFF'S USE OF THE<br>BRIGHTSTAR MARK & FAMILY OF MARKS</b>

32.     Since 2004, BrightStar has used and advertised the BrightStar Mark and Family of Marks in commerce for its wide variety of home care and health services, creating a well-known and widely respected brand.

33.     Plaintiff uses the BrightStar Mark both textually and in logo form shown below:



34.     The BrightStar Mark is arbitrary and inherently distinctive, and therefore is conceptually strong.

35.     The BrightStar Mark also is a commercially strong mark and brand. Through BrightStar's 18 years of use and promotion, the BrightStar Mark has become uniquely associated with BrightStar.

36.     BrightStar has been immensely successful. Its revenues earned under the BrightStar Mark exceeded $1 billion in the last three years alone and over $2.8 billion from 2014–2020. Below is a snapshot of BrightStar's revenue from 2014–2020.

| Year | BrightStar Revenue |
|------|--------------------|
| 2020 | $569,280,006 |
| 2019 | $483,479,832 |
| 2018 | $433,824,110 |

| 2017 | $402,818,468 |
| 2016 | $373,110,300 |
| 2015 | $339,183,167 |
| 2014 | $289,319,345 |
| **Total** | **$2,891,015,228** |

37.     BrightStar has devoted significant resources to advertising and promoting its services throughout the United States under the BrightStar Mark in various media and forms (e.g., television, magazines, newspapers, websites, and sponsorships), including over $13 million in 2020 alone, and approximately $75 million since 2008.

38.     In addition to being featured on *Undercover Boss*, BrightStar has, since 2014, engaged in extensive television advertising prominently featuring the BrightStar Mark, as shown in the examples below. BrightStar's television advertisements prominently featuring the BrightStar Mark have appeared on major national cable television networks (e.g., ABC, CLEO, CNN, Comedy Central, DIY, Fox News, FYI, Game Show Network, Great American Country, Hallmark, Headline News, HGTV, HMM, Inspirational Channel, Lifetime Movie Network, Logo, MeTV, MSNBC, NBC, Oxygen, POP, Smithsonian, TVLand, TV1, WE, and more), including during various prime-time television shows and news broadcasts watched by millions. Since 2013, advertisements prominently featuring the BrightStar Mark have received over 8.6 billion impressions. Over a six-week period in April and May 2020 alone, BrightStar's television advertisements garnered 848 million consumer impressions.  Screenshots of some of these advertisements appear below.







39.     BrightStar also uses the BrightStar Mark through its radio advertisements.

40.     BrightStar has also engaged in extensive online advertising prominently featuring the BrightStar Mark. BrightStar prominently displays its BrightStar Mark on its own highly trafficked websites (including http://www.brightstarcare.com), on its social media pages (e.g., Facebook, Twitter, YouTube, LinkedIn, Instagram), and through significant advertising on third-party websites, as shown in the examples below.

**BrightStar's Website**



**BrightStar's Facebook page**



**BrightStar's LinkedIn page**



**BrightStar's Twitter page**



41. In July 2021, BrightStar's website alone received over 302,000 unique page views and BrightStar's social media accounts collectively have tens of thousands of followers

42. Plaintiff also advertises BrightStar's services under the BrightStar Mark in national and regional print publications, magazines, industry publications, trade journals, blogs, and the like, examples of which are shown below. These advertisements, all of which prominently feature the BrightStar Mark, have exposed countless consumers and prospective consumers to the BrightStar brand.

43. BrightStar also prominently uses the BrightStar Mark on all major corporate

marketing materials. For example, BrightStar prominently uses the BrightStar Mark on brochures, flyers, and pamphlets:











44. BrightStar also uses the BrightStar Mark on many physical locations and company vehicles, such that the BrightStar Mark is viewable to all passerby, including potential customers, employees, and future BrightStar employees:





45. BrightStar prominently uses the BrightStar Mark on its business cards, as shown below:






46. BrightStar prominently uses the BrightStar Mark on its employee uniforms, as shown in the example below.



47.     BrightStar also has been a corporate sponsor to several community groups and events over the years, including the Walk to End Alzheimer's, which is sponsored by several BrightStar franchisees, and a kids' LEGO inventors team, among others, all of which attract thousands of attendees. The BrightStar Mark is prominently displayed in connection with each of these events and sponsorships, as shown in the example below:



48.     As noted above, Plaintiff BrightStar offers its home health care services under the BrightStar Mark and Family of Marks through a network of more than 300 franchised locations in dozens of states. For many years through the present, these authorized franchisees advertise and promote BrightStar's services under the BrightStar Mark, collectively contributing tens of millions of dollars to marketing and promoting the BrightStar Mark and BrightStar's services. The advertising and promotion by franchisees over the years have included, among other things, newspapers and other printed publications, television commercials, radio ads, websites, social media pages, blogs, billboards, flyers, brochures, emails, business cards, and giveaway items. Many franchisees also use the BrightStar Mark on signage on their franchised locations.

49.     In addition, the BrightStar Mark and/or Family of Marks has for many years

29

received extensive media attention nationwide, including in leading publications read or viewed by millions of people such as *The Washington Post, Bloomberg, Yahoo! Finance, Home Health Care News, HomeCare Magazine, Inc.com, The Wall Street Journal, Forbes, Pittsburgh Post-Gazette, Chicago Tribune, Chicago Sun-Times, Detroit News, Milwaukee Journal Sentinel, Arizona Republic, Atlanta Journal-Constitution*, and many more. From August 2017 through May 2020, the BrightStar Mark has received more than 228,280,600 impressions across these periodicals.

50.     Several of these articles have referred to BrightStar and its founder Ms. Sun as "inspiring" and "leaders" in the home health field and have recognized the company and brand's "incredible" and "amazing" growth, among other noteworthy accomplishments, as shown in the examples below.

| Date | Author, Title, Publication | Excerpt |
|---|---|---|
| Jan. 17, 2018 | Kevin Kruse, "The Entrepreneur's Guide To Success With BrightStar CEO Shelly Sun," *Forbes* Magazine | **Kruse:** What are the secrets behind **the incredible run you've had so far**?<br><br>**Sun:** For me, I think the reason for our success, a couple of reasons:<br>One, I think it's because we were willing to have a company owned location, grow it to a second and third to make sure we could replicate the model, and the success we had had in the first, a second or third time to make sure everything was well documented before we started franchising. |
| Nov. 19, 2012 | John Carpenter, "Executive Profile: Shelly Sun, co-founder of BrightStar Care," *The Chicago Tribune* | "I think we will be in 30 countries. We'll be in multiple brands that all impact consumers. We'll be over $1 billion in sales. And we'll either be owned by an insurance company or a large hospital network, or we'll be a publicly traded company," [Sun] said.<br>This is an aggressive forecast, said John McLellan, president of FranNet of Chicago, a franchise business consulting firm. McLellan said **BrightStar is recognized as a leader in the franchise world,** and he's not surprised Sun is thinking big. |
| Sept. 2, 2016 | "Women in Franchising with Shelly Sun," *@OurFranchise.org* | **@OurFranchise: Your career is inspiring to many women who aspire to run a business today.** Why is franchising a good model for women who want to become business owners? [Sun:] Franchising attracts women for a variety of reasons. Franchising has a strong training and support structure enabling easier access to financing. Further, the industry fosters a sense of community and offers a structured entrepreneurial venture for women, giving them the chance to follow their passions. |
| Feb. 14, 2020 | Fabian Geyrhalter, "Shelly Sun, CEO & Founder, BrightStar Care," *Hitting the Mark* podcast | Shelly Sun created a company that assists the elderly with expert, compassionate, and personal home care. . . . And **Shelly has become a leader in the world of franchise executives**. |
| Nov. 8, 2017 | Tom Kaiser, "Shelly Sun Honored by Alma Mater," *Franchise Times* | Sun started BrightStar Care in 2002, and 15 years later **the Chicago-based healthcare company has become one of the leading companies** in a category many industry watchers expect to grow far beyond its current roster of franchised healthcare providers. |

51.     BrightStar markets not only in the public market, but also in business-to-business context such as conferences, trade journals, and other business functions. While much of the BrightStar system's revenues come from contracts with individual clients and customers, a robust amount of its revenue (over $100 million annually) comes through national contracts with other businesses to provide referrals to BrightStar franchisees.

52.     Further, the BrightStar mark is used extensively in recruiting caregivers and nurses throughout its locations.  These ads appear across both various well-known and industry-specific websites, including Glassdoor, Indeed, LinkedIN, healthline.com, weather.com, foxnews.com, yahoo.com, aol.com, medicalnewstoday.com, forbes.com, people.com, webmd.com, eatthis.com, MyFitnessPal Android App, insider.com, and many more.

53.     Example advertisements are shown below. The BrightStar Mark appears in all such advertisements:





54.     As a result of BrightStar's long, extensive, successful, and exclusive use of the

BrightStar Mark, the BrightStar Mark is a commercially strong mark uniquely associated with

BrightStar.

**BRIGHTSPRING'S INFRINGEMENT OF THE BRIGHTSTAR MARK**

55.     BrightSpring was founded in 1974 and operated for decades as Res-Care, Inc.

Defendant BrightSpring provides the same services as Plaintiff BrightStar, including, home

health care, hospice, community living services, medication management, and disability services.

56.     According to its website, BrightSpring "provide[s] services that high-need

patients and clients require: supportive care, clinical and pharmacy solutions. These services

include home health care, hospice and home care to seniors, long-term specialty care to

behavioral and neurorehabilitation populations, and pharmacy therapy management to patients

across many settings." https://www.brightspringhealth.com/about-us/.

57.     Upon information and belief, Defendant elected to rebrand in 2018 to escape its

poor reputation. In August 2018—sixteen years after BrightStar began using its BrightStar Mark and long after BrightStar had become a leader in the home health care industry—Res-Care rebranded, demoting the weak, descriptive "Res-Care" in favor of doing business under a new name. But rather than respecting and staying clear of BrightStar's longstanding, strong trademark rights, Res-Care did the opposite, knowingly rebranding itself under the strikingly similar BrightSpring mark and name (the "BrightSpring Mark").

58.     Upon information and belief, Defendant was aware of Plaintiff BrightStar and the BrightStar Mark and/or Family of Marks and knowingly selected the infringing BrightSpring Marks despite such knowledge.



59.     ███████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████. Ex. 3. ███████████████████████

████████████████████████████████████

███████████████████ *Id*. at 2806, 2809.

60.     ███████████████████████████████

████████████████████████████████████

████████████████████████████████████

███████████████████.

61.     ███████████████████████████████

████████████████████████████████████

███████████████████████. Ex. 4, p. 3.

62.     ███████████████████████████████



*Id*.

63. ██████████████████████████████████████████

████████████████████████████ *Id*.

64. ██████████████████████████████████████████

█████████████████████████████████. *Id*.

65. ██████████████████████████████████████████

██████████████████████████████████████

████████████████████████████. Ex. 5.

66.     BrightSpring nevertheless obtained U.S. Trademark Reg. No. 5597520 for the BrightSpring Mark on October 30, 2018, for a variety of services, including directly competitive home health care services, among others.[1]

67.     BrightSpring prominently displays the BrightSpring Mark on the home page of its main website www.brightspringhealth.com, as shown below.

---

[1] BrightStar has petitioned to cancel this Registration at the Trademark Trial and Appeal Board on the ground that it is likely to cause confusion with the BrightStar Mark and/or Family of Marks.



68.     Although BrightSpring may claim it uses the BrightSpring Mark solely as a

holding company of subsidiary brands that provide services to end consumers, BrightSpring has

increasingly used the BrightSpring Mark in connection with services offered to consumers and in

its recruiting efforts.

69.     BrightSpring prominently displays the BrightSpring Mark on its social media

pages, including its main Facebook page **and** "careers" Facebook page, Twitter page, and

LinkedIn page, as shown below.

**BrightSpring's Facebook page**



**BrightSpring's Careers Facebook page**



**BrightSpring's Twitter page**



**BrightSpring's LinkedIn page**



70.     Similarly, BrightSpring is listed as being responsible for the Facebook pages of its subsidiaries, including All Ways Caring HomeCare:



https://www.facebook.com/AllWaysCaring/.

71.     Increasingly, BrightSpring uses the BrightSpring Mark in efforts to recruit

employees. For example, BrightSpring's website www.brightspringhealth.com links job seekers

to a webpage that lists job postings, which prominently use the BrightSpring Mark, as shown

below. These postings often refer to the employer as "ResCare / BrightSpring."



72.     BrightSpring uses the BrightSpring Mark in dozens of current postings for jobs at BrightSpring-owned locations throughout Illinois. These job postings target residents of Illinois and intentionally seek to cause confusion with Plaintiff BrightStar. For example, in a job posting for a "Direct Support Professional" (DSP) in Illinois, Defendant BrightSpring claims "[o]ur DSPs are the STARS of our organization who provide caregiving to the people we support." Ex. 1.

73.     Defendant BrightSpring's job postings are for services that are identical or nearly identical to the services Plaintiff BrightStar offers under its BrightStar Mark and/or Family of Marks. For example, one job posting seeks a caregiver/home health aide in Yorkville, Illinois to "to provide personal care for individuals in our senior community, those with intellectual and developmental disabilities, and others in need of assistance." The "About Our Company" portion of the job posting states that the company is "BrightSpring / ResCare," as shown below.

**About Our Company**

Join us in transforming peoples' lives and their communities. BrightSpring / ResCare is a one-of-a-kind human services company offering services for people with intellectual and developmental disabilities, home care for seniors, as well as education, vocational training, and job placement for people of all ages and skill levels. Right now, we have an exciting opportunity for you to join our team as a Registered Nurse.

74.     BrightSpring also advertises its name through sponsorships and promotes its name to the general public, including end-consumers. For example, BrightSpring is the presenting sponsor of the Special Olympics fundraiser in Louisville, Kentucky and is a sponsor of the "LouCity FC Soccer Team," which is an American professional soccer team.



https://www.loucity.com/corporate-partners

75. Defendant BrightSpring also causes confusion with Plaintiff's BrightStar brand and Family of Marks by intentionally renaming certain of its Res-Care services to "BrightWay Community Living"[2]:



76. ███████████████████████████████████████████████████
████████████████████████████████████████.

77. BrightSpring's Facebook page for its Yorkville, Illinois location (operating under another d/b/a, All Ways Caring HomeCare) also prominently uses the BrightSpring Mark, as shown in the screenshot below.

---

[2] Plaintiff Brightstar has filed an opposition to the registration of Defendant's BrightSpring's application for the "Brightway Community Living" trademark on the ground that it is likely to cause confusion with the BrightStar Mark and/or Family of Marks.



78.     Defendant BrightSpring's services are identical to or directly overlap with

Plaintiff BrightStar's services, and Defendant BrightSpring attends many of the same industry

events as Plaintiff under the BrightSpring Mark, including events for Home Health Care News

and, most recently, the Home Care 100 conference in 2020. Home Care 100 is a preeminent

leadership conference for C-level executives from large home care and hospice providers and a

select group of product/service providers and is an important business development conference

for BrightStar. Indeed, many of BrightStar's existing and target business-to-business clients and

national referral sources attend the Home Care 100 conference every year.

79.     The conference organizers of Home Care 100 published a directory of attendees

organized alphabetically by company name. That directory listed BrightSpring and BrightStar

representatives adjacent to one another, with the representatives from BrightSpring appearing first:



Ex. 6.

80. Again, in 2021, the directory of attendees listed BrightSpring and Brightstar representatives adjacent to one another:

Ex. 7.

81. BrightStar's CEO and BrightSpring's Director of Government Relations are both members at large of the Board of Directors for the Home Care Association of America.

82. The BrightSpring Mark is confusingly similar to the BrightStar Mark. Both are two-syllable names that share the same adjective BRIGHT as the first (and dominant) syllable, coupled with a one-syllable word that begins with S followed by a hard consonant, i.e., STAR

and SPRING. Like BrightStar, BrightSpring uses its BrightSpring Mark with the initial capital letters "B" and "S" with no space between the words. BrightSpring even uses the same blue color motif for its BrightSpring Mark.

83. BrightSpring's use of the BrightSpring Mark for its services is likely to create confusion, mistake, and deception. In fact, members of the public, including jobseekers, have already been confused and deceived by BrightSpring's use of the BrightSpring Mark.

## INJURY TO BRIGHTSTAR AND THE PUBLIC

84. BrightSpring's actions have caused actual confusion and continue to cause a likelihood of confusion.

85. Increasingly, as alleged above, Defendant BrightSpring is using its name in its efforts to recruit employees for its subsidiary brands, including "All Ways Caring Home Care" and "Brightway Community Living." Defendant's actions are harmful to Plaintiff BrightStar because of the likelihood applicants will confuse the two marks and/or will unfairly attribute the goodwill Plaintiff has, over years, built in its brand to Defendant's recently named BrightSpring company.

86. This increasing use is especially harmful to Plaintiff BrightStar because the market for caregiver employees is uniquely challenging. In 2020, the industry caregiver turnover rate was 65.2%, up from 64.3% in 2019,[3] and home care agencies repeatedly report recruiting as a top challenge. Seventy percent of home health agencies said caregiver shortages was their biggest challenge.[4]

87. BrightSpring's actions described above have damaged and irreparably injured

---

[3] https://www.hcaoa.org/newsletters/caregiver-turnover-rate-is-652-2021-home-care-benchmarking-study
[4] https://homehealthcarenews.com/2016/07/top-private-duty-caregiver-recruiting-challenges/

BrightStar. If permitted to continue, BrightSpring's actions will further damage and injure BrightStar, the BrightStar Mark, BrightStar's reputation and goodwill associated with this mark, and the public's interest in being free from confusion.

88.    BrightSpring's actions as described above have caused and are likely to continue to cause confusion, mistake, and deception as to the source or origin of the parties' services and have falsely suggested and are likely to continue to falsely suggest a sponsorship, connection, license, affiliation, or association between BrightSpring, the BrightSpring Mark, and/or BrightSpring's services with BrightStar, the BrightStar Mark, the BrightStar Family of Marks, and/or BrightStar's services.

89.    BrightStar has no adequate remedy at law.

90.    BrightSpring knew or should have known that its activities described above constituted trademark infringement and unfair competition, and thus BrightSpring acted willfully with respect to BrightStar's prior trademark rights.

**FIRST CLAIM FOR RELIEF**
**Trademark Infringement Under Section 32(1)**
**of the Lanham Act, 15 U.S.C. § 1114(1)**

91.    BrightStar repeats and realleges each and every allegation set forth above.

92.    BrightSpring used and continues to use in commerce the BrightSpring Mark in connection with the offering, sale, and advertising of BrightSpring's services, which is likely to cause confusion, or to cause mistake, or to deceive, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

93.    The actions of BrightSpring described above have at all times relevant to this action been willful.

94.    As a direct and proximate result of the actions of BrightSpring as alleged above, BrightStar has been and will continue to be damaged and irreparably harmed.

95. BrightStar has no adequate remedy at law.

**SECOND CLAIM FOR RELIEF**
**False Designation of Origin,**
**and Unfair Competition Under Section 43(a)(1)(A) of the**
**Lanham Act, 15 U.S.C. § 1125(a)(1)(A)**

96. BrightStar repeats and realleges each and every allegation set forth above.

97. BrightSpring's use of the BrightSpring Mark, as described above, is likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of BrightSpring's services, and thus constitutes false designation of origin and unfair competition, in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

98. The actions of BrightSpring described above have at all times relevant to this action been willful.

99. As a direct and proximate result of the actions of BrightSpring as alleged above, BrightStar has been and will continue to be damaged and irreparably harmed.

100. BrightStar has no adequate remedy at law.

**THIRD CLAIM FOR RELIEF**
**Trademark Cancellation Under Section 37**
**of the Lanham Act, 15 U.S.C. § 1119**

101. BrightStar repeats and realleges each and every allegation set forth above.

102. BrightSpring is the listed owner of U.S. Trademark Reg. No. 5597520 for BrightSpring filed on January 19, 2018, which issued on October 30, 2018, and covers a variety of services, including directly competitive home health care services.

103. BrightStar used the BrightStar Mark in commerce in connection with its home health care services before BrightSpring's January 19, 2018, filing date for the application that matured into Registration No. 5597520, before BrightSpring's August 8, 2018, claimed date of first use, and before any date of first use that BrightSpring may prove.

104.     The services identified in BrightSpring's Registration are identical and/or closely related to the services registered, offered, and sold by BrightStar under its BrightStar Mark. A likelihood of confusion, mistake, or deception exists between the BrightStar Mark and BrightSpring Mark, and therefore, BrightStar is damaged by Registration No. 5597520.

105.     Accordingly, pursuant to Section 2(d) of the Lanham Act, 15 U.S.C. § 1052, BrightSpring is not entitled to Registration No. 5597520 and this registration should be cancelled.

**FOURTH CLAIM FOR RELIEF**
**Unfair Competition in Violation of Illinois's**
**Uniform Deceptive Trade Practices Act**
**815 Ill. Comp. Stat. 510/1, *et seq.***

106.     BrightStar repeats and realleges each and every allegation set forth above.

107.     Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/1, *et seq.*, prohibits deceptive trade practices.

108.     BrightSpring's use of the BrightSpring Mark, as described above, is causing a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services, and as to affiliation, connection or association with, or certification by, BrightStar.

109.     BrightSpring's use of the BrightSpring Mark constitutes deceptive trade practices in violation of the Illinois Uniform Deceptive Trade Practices Act § 510/2.

110.     The actions of BrightSpring described above have at all times relevant to this action been willful and, upon information and belief, BrightSpring intends to continue its unlawful, unfair, and deceptive activities unless restrained by this Court.

111.     As a direct and proximate result of the actions of BrightSpring as alleged above, BrightStar has been and will continue to be damaged and irreparably harmed.

112.     BrightStar has no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF
### Unfair Competition in Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act
### 815 Ill. Comp. Stat. 505/1 *et seq.*

113.     BrightStar repeats and realleges each and every allegation set forth above.

114.     Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, *et seq.*, prohibits deceptive trade practices.

115.     BrightSpring's use of the BrightSpring Mark, as described above, is causing a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services, and as to affiliation, connection or association with, or certification by, BrightStar.

116.     BrightSpring's use of the BrightSpring Mark constitutes deceptive trade practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act § 505/2.

117.     The actions of BrightSpring described above have at all times relevant to this action been willful and, upon information and belief, BrightSpring intends to continue its unlawful, unfair, and deceptive activities unless restrained by this Court.

118.     As a direct and proximate result of the actions of BrightSpring as alleged above, BrightStar has been and will continue to be damaged and irreparably harmed.

119.     BrightStar has no adequate remedy at law.

## SIXTH CLAIM FOR RELIEF
### Common Law Trademark Infringement, Unfair Competition, and Misappropriation

120.     BrightStar repeats and realleges each and every allegation set forth above.

121.     BrightSpring's use of the BrightSpring Mark, as described above, constitutes common law trademark infringement, unfair competition, and misappropriation of BrightStar's

goodwill under the common law of Illinois.

122.    The actions of BrightSpring described above have at all times relevant to this action been willful.

123.    As a direct and proximate result of the actions of BrightSpring alleged above, BrightStar has been and will continue to be damaged and irreparably harmed.

124.    BrightStar has no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, BrightStar prays that this Court enter judgment in its favor on each and every claim for relief set forth above and award Plaintiff relief including, but not limited to, the following:

A.    An Order declaring that Defendant BrightSpring's use of the BrightSpring Mark infringes the BrightStar Mark and constitutes trademark infringement, false designation of origin, unfair competition, and deceptive trade practices under federal, state, and/or common law, as detailed above;

B.    A preliminary injunction enjoining BrightSpring and its employees, officers, directors, principals, parents, subsidiaries, affiliates, related companies, and all persons in active concert or participation with any of the foregoing, from:

1.    Using the BrightSpring name with recruiting and/or any consumer-facing materials or efforts;

2.    Using the word "STAR" and derivatives thereof in connection with any material, including but not limited to recruiting efforts, in conjunction with the word "Bright" and derivates thereof, including "BrightSpring" and "Brightway"; and

3.    Utilizing the Brightway Community Living name outside the state of Oklahoma.

C.      An injunction permanently enjoining BrightSpring and its employees, officers, directors, principals, parents, subsidiaries, affiliates, related companies, and all persons in active concert or participation with any of them:

1.      From using, displaying, advertising, promoting, using, and registering BrightSpring in any form or manner, including but not limited to as a trademark, service mark, or trade name, whether used alone or in connection with any other wording or designs;

2.      From representing by any means whatsoever, directly or indirectly, that BrightSpring, any products or services offered by BrightSpring, or any activities undertaken by BrightSpring, are associated or connected in any way with BrightStar, including, but not limited to, using BrightSpring, or any confusingly similar name, designs, logos, or marks; and

3.      From instructing, assisting, aiding, or abetting any other person or business entity in engaging or in performing any of the activities referred to in subparagraphs B.1 through B.2 above.

D.      An Order directing BrightSpring to immediately destroy or permanently remove, as applicable, the BrightSpring Mark from all websites (including but not limited to BrightSpring's www.brightspringhealth.com website), third-party websites (including but not limited to BrightSpring's social media pages on Facebook, Twitter, LinkedIn, and any other social media platforms), advertising, promotional materials, television commercials, videos, signage, posters, displays, brochures, catalogs, newsletters, manuals, forms, stationery, promotional merchandise, print materials, and any other materials and things that bear or display the BrightSpring Mark, or any other designs, logos, or marks that are confusingly similar to the

BrightStar Mark;

E.      An Order directing BrightSpring to immediately cancel all placements of any advertisements and listings in any media or format bearing or displaying the BrightSpring Mark, or any other designs, logos, or marks that are confusingly similar to the BrightStar Mark;

F.      An Order requiring BrightSpring to pay BrightStar the cost for corrective advertising and/or to engage in corrective advertising in a manner directed by the Court;

G.      An Order directing BrightSpring to file with this Court and serve on BrightStar's attorneys, within thirty (30) days after the date of entry of any injunction, a report in writing and under oath setting forth in detail the manner and form in which it has complied with the injunction;

H.      An Order requiring BrightSpring to account for and pay to BrightStar any and all profits arising from the foregoing acts of infringement, false designation of origin, and unfair competition, and increasing such profits for payment to BrightStar in accordance with 15 U.S.C. § 1117 and other applicable statutes and laws;

I.      An Order requiring BrightSpring to pay BrightStar compensatory damages in an amount as yet undetermined caused by the foregoing acts of false designation of origin and unfair competition;

J.      An Order requiring BrightSpring to account for and pay to BrightStar any and all profits arising from the foregoing deceptive trade acts under Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/1;

K.      An Order requiring BrightSpring to pay BrightStar's costs and attorney fees in this action pursuant to 15 U.S.C. § 1117, and other applicable statutes and laws;

L.      An Order directing the United States Patent and Trademark Office and its

Director to cancel Registration No. 5597520; and

      M.     Other relief as the Court may deem appropriate.

## **JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38, BrightStar respectfully demands a trial by jury for all claims so triable.

Date: August 27, 2021

Respectfully submitted,

*/s/ Kayla E. Schmidt*
Kayla E. Schmidt
kayla.schmidt@huschblackwell.com

HUSCH BLACKWELL, LLP
120 S. Riverside Plaza, Suite 2200
Chicago, IL 60606
312-655-1500

Rudolph A. Telscher, Jr.*
rudy.telscher@huschblackwell.com
Jennifer E. Hoekel*
jennifer.hoekel@huschblackwell.com

HUSCH BLACKWELL, LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
314-480-1500 Telephone
*pro hac vice forthcoming*

**Counsel for Plaintiff**
**24-7 Bright Star Healthcare, LLC**

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of August, 2021, I caused the foregoing to be filed electronically with the Clerk of Court and to be served via the Court's Electronic Filing System upon all counsel of record.


*/s/ Kayla E. Schmidt*